IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

YOUNES KABBAJ, :
:
        Plaintiff, :
:
v. : Civil Action No. 14-982-RGA
:
AMERICAN SCHOOL OF TANGIER, :
et al., :
:
        Defendants. :

Younes Kabbaj, *Pro Se* Plaintiff.

Michael Brennan Rush, Esquire, Potter Anderson & Corroon, LLP, Wilmington, Delaware; Counsel for Defendants American School of Tangier, Board of Trustees for the American School of Tangier, Stephen E. Eastman, and Edward M. Gabriel.

Randolph Karl Herndon, Jr., Esquire, McDermott Will & Emery LLP, Washington, D.C.; Counsel for Defendants Mark S. Simpson and Brian K. Albro.

**MEMORANDUM OPINION**

March 3, 2015
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Younes Kabbaj filed this action pursuant to 28 U.S.C. § 1332 alleging diversity of citizenship and damages in excess of $75,000, which he elsewhere specifies as $2,694,400. (D.I. 1, ¶13; D.I. 1-1). He appears *pro se* and has paid the filing fee. (Docket Text re: D.I. 1). He has moved to amend the complaint, accompanied by a proposed amended complaint. (D.I. 13 & 14; *see also* D.I. 19; D.I. 23). There was a further motion to amend the complaint that was not accompanied by a proposed amended complaint. (D.I. 37 & 38). There was later a further "Notice of First Amended Complaint" (D.I. 47) and "First Amended Complaint." (D.I. 48). Before the Court are Defendants' motions to dismiss (D.I. 10, 25, 27), as well as various other motions. (D.I. 11, 28, 32, 52). Kabbaj too has filed numerous motions. (D.I. 6, 13, 20, 23, 24, 30, 37, 48, 49, 50, 51).

Kabbaj is a former employee of the American School of Tangier. He has filed numerous lawsuits.[1] In the first action, C.A. No. 10-431-RGA, he named as defendants the American School of Tangier; its Board of Trustees; Stephen Eastman, Chairman of the Board of Trustees; Edward Gabriel; and Mark Simpson. (C.A. No. 10-431-RGA, D.I. 12). The parties (excepting Mr. Simpson, who does not appear to have been served, and did not respond to the complaint) entered into a confidential settlement agreement, followed by a joint motion to dismiss with prejudice and consent order, granted by the Court on April 24, 2012. (*See* C.A. No. 10-431-RGA, D.I. 52, 53, 54). The dismissal order provided that the Court would retain jurisdiction of the matter following dismissal

---

[1] *See* C.A. Nos. 10-431-RGA, 12-1322-RGA-MPT, 13-1522-RGA, 14-780-RGA, 14-1001-RGA, 14-1484-RGA.

for the purpose of enforcing the parties' written settlement agreement and to resolve disputes regarding that settlement agreement. (C.A. No. 10-431-RGA, D.I. 54 at 3). The dismissal order restrained and prohibited Kabbaj from having any contact with about forty-five (45) named persons and entities (*i.e.*, the "Releasees") and many more individuals and entities not identified by name. The dismissal order further provided that, unless "prior written permission of a judge of this Court" was obtained, Kabbaj could not bring a civil action against any of the Releasees "with respect to any matter not released by the Parties' settlement agreement" and with respect to "any claim that any Party has breached the settlement agreement." (C.A. No. 10-431, D.I. 54 at 2). The Releasees include the American School of Tangier ("AST"), its Board of Trustees, Edward M. Gabriel, Stephen E. Eastman, and Mark Simpson. (*Id.* at 1-2).

On July 25, 2014, Kabbaj filed the instant complaint against AST, its Board of Trustees, Gabriel, Eastman (collectively, "AST defendants"), Simpson, Brian K. Albro, and John Does 1-83 without receiving written permission from the Court. Kabbaj alleges conspiracy, defamation, breach of contract, tortious interference with contract, negligence, negligent misrepresentation, fraudulent misrepresentation, negligent infliction of emotional distress, intentional infliction of emotional distress, malicious prosecution, and false imprisonment. (D.I. 1). Subsequent amended complaints do not substantially change the defendants, other than adding more John Doe defendants, but do reduce the number of claims. (*E.g.*, D.I. 14 (85 John Doe defendants; four claims including breach of contract, tortious interference with contract, and "negligence/negligent misrepresentation/ fraudulent misrepresentation"); D.I. 48 (108 John Doe defendants; four claims)).

2

The AST defendants, Simpson, and Albro move to dismiss the complaint for Kabbaj's failure to comply with the April 24, 2012 order. (D.I. 10, 27). In addition, the AST defendants seek an order relieving them from having to respond to further filings made by Kabbaj unless specifically directed to do so by the Court (*e.g.*, D.I. 10 ¶9) and Albro and Simpson move to strike certain filings by Kabbaj. (D.I. 52). Finally, the AST defendants seek sanctions in the sum of $2,000 for having to respond to the complaint in light of Kabbaj's failure to comply with the April 24, 2012 order. (D.I. 27). In turn, Kabbaj seeks sanctions. (D.I. 30). Simpson and Albro similarly move for dismissal on the grounds that Kabbaj failed to obtain permission to file this action as required by the April 24, 2012 order. (D.I. 25, 26)

AST, its Board of Trustees, Gabriel, Eastman, and Simpson were named as Releasees in the settlement of C.A. No. 10-431-RGA. According to the Court's April 24, 2012 order:

> [Kabbaj] may not bring a civil action against any of the "Releasees" [ ] in any court of law in the United States, with respect to any matter not released by the Parties' settlement agreement, including but not limited to any claim that any party has breached the settlement agreement, without the prior written permission of a judge of this court. Also, at least four (4) business days before seeking the permission of the Court to initiate such a civil action, [Kabbaj] must first provide written notice of such intention to the Defendants' counsel, Larry R. Seegull, Esq., via both electronic mail to "larry.seegull@jacksonlewis.com" and written letter to Larry R. Seegull, Esq., Jackson Lewis LLP, 2800 Quarry Lake Drive, Suite 200, Baltimore, Maryland 21209, 410-415-2004.

(C.A. No. 10-431-RGA, D.I. 54, at 2-3).

Kabbaj has represented in other filings that Albro is Simpson's husband.[2] Under the terms of the settlement agreement and the April 24, 2012 order, Releasees include family members of the named Releasees, and Kabbaj is required to obtain permission from this Court before instituting any new action against them. John Does 1-83 (or 1-108) are identified by internet protocol address, as owners, operators and/or administrators of blogs, and as owners, operators, and/or administrators of email addresses. The John Doe defendants may or may not be Releasees.[3]

There is nothing on the court docket that indicates Kabbaj provided a copy of the instant complaint to Seegull. Nor did Kabbaj seek leave to file a complaint against the named Releasees. Kabbaj agreed in the executed settlement documents to follow a certain procedure regarding any further civil action against any Releasee, yet he failed to do so. As is evidenced by his numerous court filings, Kabbaj is well aware of the procedures by which he is required to abide. Yet he chose not to follow the procedures to which he agreed. Thus, the motions to dismiss will be granted[4] and the complaint will be dismissed for failure to follow the procedure to which Kabbaj agreed.[5] *See Kabbaj v.*

---

[2] *See Kabbaj v. Google, Inc.*, 2014 WL 1369864, at *6 n.4 (D. Del. Apr. 7, 2014). In the instant action, Kabbaj alleges that Albro resides at the same address as Simpson (D.I. 1, ¶¶ 6 & 8) and is Simpson's "unmarried boyfriend." (D.I. 23-1, ¶ 8).

[3] The Court is unable to determine whether any of the John Does are Releasees under the settlement agreement. For those John Does identified by an "http" address or an email address, it seems that they could be Mark Simpson. (*E.g.*, D.I. 23-1, ¶¶ 10 & 11 – John Does 40, 41, 49, 50, 53, 54, 63, 73, 83, who all have "Simpson" as part of the address). The John Doe defendants who are identified by IP addresses are represented as being in "NY," "OR," or "Paris, France," (D.I. 23-1, ¶ 9), which suggests this Court may not have personal jurisdiction over them. The Court also notes that Kabbaj's initial attempt to sue Simpson was dismissed for lack of personal jurisdiction, and the dismissal was affirmed on appeal. *See Kabbaj v. Simpson*, 547 F. App'x 84 (3d Cir. 2013).

[4] Nothing in any of the proposed amended complaints changes this analysis.

[5] On October 18, 2012, Kabbaj filed a motion for leave to file a lawsuit against Releasee Mark S. Simpson in C.A. No. 10-431-RGA at D.I. 55, which he originally filed in the United States District Court for the Southern District of New York. This Court ultimately granted Kabbaj leave to file a lawsuit against Simpson. The New York case was transferred to this Court and assigned C.A. No. 12-1322-RGA-MPT.

4

*Google Inc.*, No. 14-2663 (3rd Cir. Feb. 10, 2015) (affirming dismissal on this basis in an appeal from C.A. No. 13-1522-RGA).

The majority of the allegations are directed towards Simpson and Albro. In general, the allegations relate to "a massive internet operation against [Kabbaj]." (D.I. 1, ¶16). Kabbaj names the John Doe "internet defendants" (D.I. 1, ¶17) as acting on behalf of the AST defendants, Simpson, and Albro.[6] As recently held by the United States Court of Appeals for the Eleventh Circuit, the John Doe defendants were allegedly agents to Simpson's principal, and Kabbaj was therefore required to obtain permission before filing this action. *See Kabbaj v. Doe*, 2015 WL 106656, at *3 (11th Cir. Jan. 8, 2015). Thus, the settlement agreement does not permit the suit against the John Does.[7]

The Court notes that Kabbaj, after following the appropriate procedure and in compliance with the April 24, 2012 order, was recently given permission to file a

---

As noted (n.5, *supra*), the matter was subsequently dismissed for lack of personal jurisdiction. On January 2, 2014, Kabbaj filed another motion to file a lawsuit against AST and Simpson. (C.A. No. 10-431-RGA at D.I. 65). Kabbaj did not provide a proposed complaint for the Court to review to determine the adequacy of the pleading and proposed action, and the motion was denied. (*Id.* at D.I. 87). Next, on March 21, 2014, Kabbaj filed a motion to file a complaint against AST, Simpson, and Brian Albro, who is described as Simpson's husband. (*Id.* at D.I. 70). On January 5, 2015, the Court denied the motion to file a new complaint as to AST and granted the motion to file a new complaint as to Simpson and Albro. (*Id.* at D.I. 87).

[6] Simpson and Albro are named as defendants in other cases filed by Kabbaj. *See* C.A. Nos. 10-431-RGA (Simpson), 12-1322-RGA-MPT (Simpson), 14-780-RGA (both), 14-1001-RGA (both).

[7] It appears that Kabbaj's operative theory against the John Doe defendants is that they tortiously interfered with the settlement agreement. (D.I. 23-1, ¶ 69). "Under Delaware law, the elements of a claim for tortious interference with a contract are: '(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.'" *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013). It is doubtful that Kabbaj states a claim against the John Doe defendants, but, if he does, it is only because they must be assumed to be Simpson's agents.

5

complaint, somewhat similar to the complaint herein, against Simpson, Albro, and John Doe defendants. (See C.A. No. 10-431-RGA at D.I. 70, 87).

The Court will grant Defendants' motions to dismiss. (D.I. 10, 25, 27). The Court will dismiss the complaint and all proposed amended complaints as the original complaint was filed in contravention of the April 24, 2012 order and the settlement agreement entered into by Kabbaj. Kabbaj and Defendants have filed numerous other motions in this case. (D.I. 6, 11, 13, 20, 23, 24, 25, 28, 30, 32, 37, 48, 49, 50, 51, 52). Most of the motions (D.I. 6, 11, 13, 20, 23, 25, 30, 32, 37, 48, 49, 51, 52) are moot, and will therefore be dismissed.

As to D.I. 24, Kabbaj moves to unseal exhibits and pleadings and, in particular, D.I. 14, 15, 16, 17, 18, and 22, which were previously sealed by the Court. The sealing of D.I. 14, 15, 16, 18 and 22 was erroneous. They will therefore be unsealed. Subsequent to the filing of the motion to unseal, the Court sealed D.I. 38, which is 533 pages long. Having reviewed D.I. 38, it also appears that it should not have been sealed. Most of the contents of the sealed documents were publicly available prior to having been filed with the Court. Previous public availability, at least in the circumstances of this particular case and considering the documents at issue, indicates that the documents should not remain under seal. See generally West Penn Allegheny Health Sys., Inc. v. UPMC, 2012 WL 512681, *8-9 (W.D. Pa. Feb. 14, 2012). But D.I. 17 also contain irrelevant personal information.[8] Therefore, the Court will grant the

---

[8] For example, Kabbaj includes the purported home addresses of two family members of former presidents of the United States. Thus, I will direct that the Clerk's Office redact from D.I. 17 the addresses that appear to belong to these two individuals.

motion to unseal as to D.I. 14, 15, 16, 18, and 22, and will grant it as to a redacted copy of D.I. 17. The Court will also *sua sponte* unseal D.I. 38.

As to D.I. 28, since the Court is dismissing the case, the Court will grant the motion to quash third party subpoenas. (D.I. 28).

As to D.I. 30, since Kabbaj's position is meritless, his request for sanctions (D.I. 30) will be denied.

As to D.I. 50, the Motion Requesting Establishment of Procedure to Pursue Claims, it relates to C.A. No. 10-431-RGA, and not to this case. Therefore, it will be denied.

At this juncture, the Court declines to impose the sanctions sought by the AST defendants. Kabbaj, however, is placed on notice that future complaints that name any of the Releasees and are filed without seeking permission pursuant to the process established in No. 10-431-RGA will be summarily dismissed. In addition, sanctions may issue should Kabbaj continue to file new complaints containing repetitive allegations and/or repetitive motions or motions in closed cases.